# Toy, Appellant, v. International Mercantile Marine Company.

*Negligence—Passenger on ship—Railed off portion of deck—Contributory negligence.*

Under the facts as found by the court where a passenger on a ship enters within a railed off portion of the deck, and in play steps backward into an unguarded hole through which a mast of the ship projected, and is injured, she is guilty of contributory negligence as a matter of law, and cannot recover from the owner of

the ship for her injuries, and this is the case although she had never seen the hole before, and did not know it was there, and although passengers had been permitted to use the space.

Trexler and Kephart, JJ., dissented.

Argued Dec. 1, 1914. Appeal, No. 225, Oct. T., 1913, by plaintiff, from order of C. P. No. 2, Philadelphia Co., Dec. T., 1912, No. 3142, entering judgment for defendant n. o. v. in case of Mary P. Toy v. International Mercantile Marine Company. Before Rice, P. J., Orlady, Head, Kephart and Trexler, JJ. Affirmed.

Trespass to recover damages for personal injuries.

At the trial it appeared that the plaintiff was injured on September 9, 1911, while traveling as a first-class passenger on the steamship Dominion operated by the defendant company. The circumstances of the accident are stated in the opinion of the Superior Court. The locality of the accident is shown by the photograph on following page.

Verdict for plaintiff for $500.00. Subsequently the court entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Thomas F. Gain,* with him *Edgar Lank* and *Alfred L. Cameron,* for appellant.—The company was negligent: McBride v. McNally, 243 Pa. 206; Behrens v. Furnessia, 35 Fed. Repr. 798; Iseminger v. York Haven, Etc., Co., 209 Pa. 615; Amos v. Del. River Ferry Co., 228 Pa. 362.

The plaintiff was not chargeable with contributory negligence as a matter of law: Farr v. P. & R. R. Co., 24 Pa. Superior Ct. 332; Cohen v. P. & R. Co., 211 Pa. 227; Bloomer v. Snellenburg, 221 Pa. 25; Hamill v.

Christiana Boro., 49 Pa. Superior Ct. 371; Wilson v.
McCluskey, 53 Pa. Superior Ct. 25.

*Charles Biddle,* of *Biddle, Paul & Jayne,* for appellee.
—There was no negligence shown: Kilbride v. Carbon,
Etc., Co., 201 Pa. 552; Seddon v. Bickley, 153 Pa. 271;
Kohn v. International Mercantile Marine Co., 180 Fed.
Repr. 495.

Plaintiff was guilty of contributory negligence: An-
derson v. Scully, 31 Fed. Repr. 161; The "Montrose,"

179 Fed. Repr. 1000; Lumis v. Traction Co., 181 Pa. 268; Robb v. Connellsville Boro., 137 Pa. 42; Shallcross v. Philadelphia, 187 Pa. 143; Tolan v. Philadelphia, 35 Pa. Superior Ct. 311.

OPINION BY ORLADY, J., February 14, 1915:

The plaintiff recovered a verdict of $500.00, and after argument the court entered judgment for the defendant non obstante veredicto, from which the plaintiff has taken this appeal.

The facts of the case are not in dispute, and the plaintiff's right to recover is determined on her own testimony. She was a first-class passenger on the steamship Dominion, of the defendant company, and the day before its arrival at Philadelphia, about two o'clock in the afternoon, met with an accident on the forward part of the ship, under the following circumstances: She was familiar with the general arrangement of the deck, on which her cabin opened, and was accustomed to being over the different parts of this deck, so as to be well acquainted with the objects on it. With others, she was within a railing that inclosed deck furnishings and equipments, coils of rope and ship necessaries, and she knew that the rail was there as a notice that passengers should not occupy the space beyond it. Within this protected area there was an opening in the deck of about two feet, eleven inches long, and fourteen inches in width, through which a mast of the ship projected. While waiting for other parties, the plaintiff and one of her fellow passengers were engaged in tossing an orange, and in her effort to recover it she "slipped backwards into this hole," and received the injuries for which she seeks to recover. The passengers had the permissive use of the deck for exercise, and while she was not technically a trespasser where the accident happened, she must be held to the rules governing the use of a place which requires the exercise of care according to the circumstances. An unsteady deck of a ship on which there

are many articles required for efficient service, would naturally require her to take notice of the things she would reasonably see, and when she walked backward in her play, and stepped into an unguarded hole through which a mast of the ship projected, she must be expected to give a better reason than to·say she did not know it was there, because she had not looked.  Even in walking forward, the rule would require her to be reasonably careful in viewing the place she was to occupy.  She knew that this part of the ship was railed off, which was a notice to passengers that it was not free for general promenade purposes.  To engage in play in such a place, and conduct herself so that it was not possible for her to see where she was going, was such contributory negligence on her part as to prevent a recovery.

The judgment is affirmed.

TREXLER, J., dissenting:

The testimony of the plaintiff as to the accident may be summarized as follows: it occurred on the forward deck of the ship, a place where she had never been before; the deck was on the same level as the cabin deck, and with it formed practically one deck.  The plaintiff, in company with some others, was on the forward deck, and she and a young man were tossing an orange.  She took a step backward and fell into a hole in the deck.  She had never seen the hole before, did not know it was there.  There were a good many people on the forward portion of the deck, about a dozen.  One lady was sitting within two or three feet of the hole.  The plaintiff knew that there was a rail that ran across the deck and separated the two decks, but she had never passed more than three or four feet beyond the rail and then only on two occasions, and each time the gate to the forward deck was open.

The testimony of the ship's carpenter was to the effect that there was no cargo on the forward deck.  There was nothing on the deck to interfere with a view of the hole.

The deck was separated from the saloon deck by bars, one end on an eye and the other end hooked into another eye between two posts. The bars were there to stop the passengers from going on the forward deck, but in "fine weather they let them go there, will not stop them." In stormy weather a screen was put right across. The forward deck was originally built for the purpose of carrying cattle, but it is used for nothing now, "only it is just there, that is all, play sports and different things." There are some of the lifeboats on the forward deck and the open entrance when the bars are down is four feet wide. There were no restrictions on the passengers going to the forward deck when the weather was fine. He (the carpenter) saw many hundreds of passengers using this part of the deck where the lady was hurt. It was used during all that trip by the passengers, "they were knocking around there all the time." They were about the mast every day. There was a clear space where they were having these sports between the railing and the mast. The other openings in the deck were guarded with railings, but this hole through which the mast extended into the air was unguarded except a combing which was only about one and one-half inches high, and except for the mast there was a space of sixteen by forty-five or fifty feet, a big square space, and on this it was quite usual for passengers to amuse themselves. The mast which passed through the hole was not used for any purpose during the voyage and the opening could have been covered without interfering with the business use of the deck.

The opinion of this court states that this plaintiff testified, "She was familiar with the general arrangement of the deck on which her cabin opened and was accustomed to being over the different parts of the ship on this deck, so as to be well acquainted with the objects on it." If this is intended to assert that the injured plaintiff was familiar with the deck upon which she was injured, or with the hole in which she fell, we can find

nothing in the testimony to warrant it.   We quote
further from the opinion of the court.   "With others, she
was within a railing that inclosed deck furnishings and
equipments, coils of rope and ship necessaries, and knew
that the rail was there as a notice that passengers
should not occupy the space beyond it."   The testimony
shows that this deck was used for nothing except for
sports and a place where passengers resorted, and there
is no evidence that there were any furnishings or equip-
ment on the deck excepting some of the lifeboats.   In our
view it was for the jury to determine whether in the light
of all the circumstances the rail which extended across
the deck was notice to passengers that they were not to
use the deck for general promenade purposes.   There is
nothing in plaintiff's testimony to the effect that she
"knew that the rail was there as a notice that passengers
should not occupy the space beyond it."   For her to en-
gage in play in such a place where it was customary for
passengers to indulge in sports certainly could not be
held to be negligence per se.   A rail with an open gate
does not necessarily constitute a barrier, and a place
where hundreds of passengers resorted as the ship car-
penter testified cannot be regarded as a part of the boat
differing essentially from other portions of the same deck
level.   With the knowledge on the part of the officers of
the boat that this deck was continuously used for the
purpose of sport and lounging, a question remained for
the jury to determine whether they took the proper pre-
caution to prevent dangers which might reasonably be
anticipated from such occupation.   They were bound to
foresee and guard against such damages as would natur-
ally and according to the usual course of things be ex-
pected to occur, and having guarded the hatchways with
railings, the question remains whether the same pre-
cautions should not have been taken in respect to the
hole into which the plaintiff fell.

In view of the fact that the passengers were accus-

506 TOY, Appellant, *v.* INTERNATIONAL M. M. CO.

Dissenting Opinion—Opinion of the Court. [61 Pa. Superior.Ct.

tomed to having sports upon this deck certainly the plaintiff could not be charged with negligence in taking a step backward.

In Iseminger v. York Haven Water & Power Company, 206 Pa. 591, a pedestrian stepping backward into a hole in the pavement, was not held to be per se guilty of negligence. Was the plaintiff charged with the knowledge that upon a deck given over to amusements, she was likely to encounter an unguarded hole? It is only in clear cases where the facts and inferences to be drawn from the testimony are free from doubt, and but one conclusion is deducible that the court may not permit a jury to reach a different one: Sturtz v. D., L. & W. R. R. Co., 225 Pa. 249.

The questions as to whether there was negligence in leaving the hole unguarded, and whether the plaintiff exercised ordinary care under the circumstances, were properly submitted to the jury. I would reverse and thereby allow the verdict for the plaintiff to stand.

KEPHART, J., concurs in the dissenting opinion of TREXLER, J.

OPINION BY ORLADY, J., December 20, 1915, on reargument:

This case was decided, in an opinion filed February 24, 1915, and upon the appellant's petition, a reargument was allowed. After a careful review of the record we are not disposed to change the judgment originally entered. We have been aided in this examination of the case by the able argument of counsel, and the exhibit of a photograph, which was in evidence on the trial in the court below, but was not presented on the first argument of this appeal. Taking the plaintiff's testimony in its most favorable light, and giving her the advantage of every inference to be drawn from the conditions presented to her at the time she met with her unfortunate accident we feel that she was clearly guilty of contributory negligence, and is not entitled to recover.

The accident happened on the forward cabin deck of a large steamer. The negligence urged against the defendant company is, that an opening in the deck was not properly protected. But before the defendant company can be held to be negligent it must be reasonably shown that they failed in some duty they owed to the plaintiff. It is not suggested by any testimony that this hole was treated differently on this ship from similar openings in other ships. The photograph makes it apparent that it would be impracticable to cover it, and shows, what must have been obvious to every one within view of it: that the opening contained a large steel mast, having attached to it (a short distance above the deck level) four movable derrick arms, with iron chains and ropes, as tackle appliances for the operation of the derricks, in the handling of freight and baggage from the lower decks when in port, or in an emergency at sea, and until such an emergency arose, the ropes and chains would remain stationary and attached to the mast. The accident occurred on a clear day with a calm sea, after the plaintiff had been a first-class passenger for nine days, and spending most of her time on this cabin deck, within view of this mast, which she must necessarily have seen, on account of its prominence and location. Assuming that passengers did occupy the space around this mast, with the permission of the officers, and assuming that the rail separated the forward part of the deck from the cabin area, and assuming that other passengers used this deck by permission of the ship's officers for exercise and pleasure, the controlling fact remains, that the plaintiff after being on this forward deck for about ten minutes, engaged in the sport of tossing an orange with a fellow passenger, who was located next the ship's rail, while she was standing facing him, near to the mast, and in the progress of her sport she stepped backward into the opening around the mast and received her injuries. It is as idle to say that she could not see the hole around the mast, as it would be to say that she did not see the large mast itself,—one

508   TOY, Appellant, v. INTERNATIONAL M. M. CO.

Opinion of the Court—Dissenting Opinion. [61 Pa. Superior Ct.

was as prominent as the other,—and was directly in her selected line of movement. The fact must necessarily be, that she did not look at all, and voluntarily stepped backward into or against an object which any reasonable precaution would have advised her against. Using a public highway with such disregard of care would prevent her recovery, and on shipboard, with unusual surroundings, she would be expected to use care proportionate to her surroundings. While she states she was not within this enclosed portion of the forward deck prior to the accident, and did not know of the existence of the hole; under the facts she presents, she cannot hold the company liable, when she ignores the presence of such conspicuous objects in a place where she would naturally see the many unusual things that are used in the operation of a large steamship. In Kohn v. International Mercantile Marine Company, 180 Fed. Reporter 495, it was held that a hawser hole, did not require a permanent guard, that the danger of getting into it was too remote a contingency to impose the duty of guarding it. "Before the accident can happen, it was necessary that a number of circumstances should combine—some of them most unlikely to occur,—and even the high degree of care that is properly required from a carrier of passengers, would be overtaxed if the carrier should be charged with the duty of foreseeing them all." See also In re Montrose, 179 Fed. Reporter 1000. Having stepped into a perfectly obvious danger without looking where she was going, she voluntarily contributed to her unfortunate accident, and cannot recover damages from a defendant who is not shown to have safeguarded its ship's deck in any different manner from other transportation lines. The mast and hole were so obvious that all risk of stepping in the hole could have been avoided by the exercise of any reasonable care.

The judgment of the court below is affirmed.

TREXLER, J., Dissenting, on reargument:

I see no reason for changing my views as expressed in

an opinion heretofore filed.   The owners of a passenger boat are charged with the highest degree of care for the safety of their passengers: McBride v. McNally, 243 Pa. 206; International Mer. Mar. Co. v. Smith, 145 Federal Reporter 891.   In the case we are considering, the forward deck was a place where hundreds of passengers resorted for amusement.   The carrier's duty to them, did not differ from that which it owed to them when they were on the main deck.   In Hill v. Starin, 73 N. Y. Sup. S. C. Court of Appeals, 91, 66 N. E. Repr. 1110, there was a partition separating the bow from the rest of the vessel. It was held that the fact that passengers had been in the habit of resorting to the place of the accident was admissible as showing that the officers of the boat must have known of it and therefore competent upon the question whether they took proper precaution to prevent any danger which might be anticipated from such occupation.   See also Simons v. New Bedford, Etc., Steamboat Co., 97 Mass. 361.   The decision in Kohn v. Int. Mer. Marine Co., 180 Federal Reporter 495, referred to in the majority opinion presents an entirely different state of facts than that in the case we are considering.   There the hawser hole was in the side of the vessel and the accident occurred to a child who put its hand in the hole while the vessel was docking and thus came in contact with a tow rope connecting the ship with a tug.   Certainly the carrier had a right to dock its vessel using the methods ordinarily employed for that purpose.   Accidents will happen in the operating of a ship even where the highest degree of care is exercised.   In our case the mast and its appurtenances were not required for the operation of the ship when not in port.   The ship's carpenter testified that the opening at the mast could have been covered without interfering with the business use of the deck.   A railing such as protected the other openings in the deck could have been provided, and thus the passengers could have played without danger to life or limb.

The majority opinion states that the defendant was not "shown to have safeguarded its ship's deck in any different manner from other transportation lines." It was not the duty of the plaintiff to prove this: Amos v. Del. Riv. Ferry Co., 228 Pa. 362 (367). The jury might consider the fact that the other openings in the deck were provided with railings and this opening had none. Whether the opening should have been guarded was a question for them to decide.

In considering the alleged negligence of the plaintiff, we may assume that she had the right under the facts as presented, to go on the forward deck. We may also assume that she could see the mast. The photograph does not show it in relation to other objects but undoubtedly it was plainly visible. Whether she was bound to see the hole is another question. The presence of the mast did not necessarily charge her with knowledge of a small unguarded opening at its base. Was she required to anticipate that in a space given over to sports a step backward might cause her to fall into an unguarded opening. In a place where as stated before "many hundreds" of the passengers resorted, and were allowed to play, was such danger to be apprehended? Her duty must be considered in the light of the use made of the deck, and whether she should have seen the hole or not was for the jury.

As stated in my former opinion I would enter judgment on the verdict.

Judge KEPHART joins in this dissent.