## Mullin, Appellant, *v.* Welsbach Street Lighting Company.

Argued April 23, 1935. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*William T. Connor,* with him *John R. K. Scott,* for appellant.

*Vincent P. McDevitt,* with him *Charles B. Downs,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, May 27, 1935:

On April 7, 1933, plaintiff and two others were sent by their employers with a truck, on the top of which, resting flat, was a sheet of plate glass, about 80 inches by 140 inches in size and weighing about 100 pounds, to deliver the glass to a warehouse at 1924 Brandywine Street in the City of Philadelphia. When they reached there, about 7 : 45 a. m., they found that another truck was occupying the street immediately in front of the warehouse, and hence were compelled to back their truck to the curb of 1922 Brandywine Street, the adjoining property. In unloading the glass it was stood upright on the truck; plaintiff took hold of it, with his hands underneath the then lower edge, at the end nearest the warehouse, another employee took hold of it in the same way in the middle, and the third in the same way at the rear end. In carrying it plaintiff was, therefore, compelled to lead the procession walking backwards, the middle man to walk sideways, and the man at the other end to walk forwards.

Before starting to carry the glass from the truck to the warehouse, plaintiff looked carefully in the direction in which he was to walk backwards, and saw that there were no obstructions in the way. Immediately before they moved, he looked again with a like result, and then the party started. There was a fourth man with them, whose duty it was to keep the carriers advised if anything got in their way during their transfer of the glass. After they had taken some five or six steps, plaintiff, who, as we have said, was at the front end and was walking backwards, tripped over a ladder, which an employee of defendant had, in the meantime, carelessly and negligently placed against a lamp-post in the direct line of their journey with the glass. As a result plaintiff fell and received the injuries for which this suit was brought. It appears that defendant's employee who had the ladder, brought it from across the street and set it up against the lamp-post after plaintiff and the other carriers had left the truck and were proceeding on their journey. He gave no notice of

his intention or of what he had done, though, if he had looked, he would have seen the oncoming party with the sheet of glass; and plaintiff's companion, who was on the lookout in order to protect the carriers, did not see what the former had done in time to give warning.

The trial judge entered a nonsuit, which the court in banc refused to set aside. This was error. From the language used in the opinion we are left in doubt as to the reason for the court's action. In places it would seem to be asserted that it was because the lookout erred in not seeing the danger and giving notice to the carriers. He said it occurred too quickly to enable him to do so; but assuming he was negligent plaintiff was not debarred of recovery by reason thereof. In other places in the opinion it seems implied that plaintiff was guilty of contributory negligence because he did not continue looking where he was going. He could not do this, however, if he was to continue carrying the glass. He was, as we have said, necessarily walking backwards, and in view of the size, shape and weight of the glass, he could not, without risk to the glass and to himself and his companions, do other than walk as he did.

That it was a legal and proper thing to carry the glass across the footway, in order to deliver it to the warehouse to which it was sent, is no longer an open question: Vallo v. United States Express Co., 147 Pa. 404; Rachmel v. Clark, 205 Pa. 314, 318; Stahle v. Poth, 220 Pa. 335. "Persons walking on the pavements of a large city are not bound to exercise extraordinary care. They have the right to assume that the pavements are reasonably safe, and that they, by the ordinary use of their eyes and going at an ordinary pace, can safely walk on them. Care according to the attending circumstances, is all that the law enjoins": Bruch v. Phila., 181 Pa. 588. In determining whether or not a pedestrian has exercised sufficient care, the fact that his arms are encumbered by packages, which to a degree prevents him from seeing what is on the pavement, is one of the attending circumstances

which must be taken into account: Nicholson v. Phila., 194 Pa. 460; Markman v. Bell Stores Co., 285 Pa. 378. A fortiori, when, as here, the party injured was helping to carry across the pavement, as he had a right to do, a burden which prevented him seeing anything placed on the pavement, in the line of his travel after he took up the burden, he will not be held to be contributorily negligent, as a matter of law, if he looked before he started on his journey, and neither then, nor at any time afterwards, had any reason to believe that an obstacle had been or would be negligently placed by another directly in his pathway.

"It is only in clear cases where the facts and the inferences to be drawn from them are free from doubt that the court is warranted in saying that there was contributory negligence." Hence, in a case where the plaintiff and a friend were standing and talking to a third party in broad daylight, and "as she [plaintiff] turned to the right to leave, she naturally, in order to make room for her companion, who was standing at her left, took a step backwards and to one side, and thus placed her foot in the hole, which extended nearly half way across the pavement . . . without looking behind her," it was held that the question of her negligence was one for the jury: Iseminger v. York Haven W. & P. Co., 206 Pa. 591, 594. It would perhaps be difficult to follow that case if similar controlling facts appeared, but it is clear that if there was no negligence per se there, it is impossible to conceive that it existed here.

Travelers on public streets must look where they are going, but "this does not necessarily imply that the pedestrian must keep his eyes constantly and at every moment on the pavement": Ford v. Phila., 45 Pa. Superior Ct. 404, 406, per RICE, P. J. If through no fault of his own a pedestrian is prevented from seeing a defect or obstruction in or on the sidewalk, which results in his injury, he is entitled to claim compensation therefor: Burchfield v. Boro. of Conneaut Lake, 114 Pa. Superior Ct. 114. In

the instant case plaintiff carefully looked at the only times he could look, and then proceeded, without negligence, in doing what he had a right to do, at the time, in the place and in the way he had a right to do it.

The judgment of the court below is reversed, the nonsuit entered by the trial judge is set aside and a venire facias de novo is awarded.